IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| KENNETH W. HOPKINS, | : |
| | : CIVIL ACTION NO. 08-CV-302-JJF |
| Plaintiff, | : |
| vs. | : |
| | : |
| CITY OF WILMINGTON, | : |
| | : |
| Defendant. | : |

**AMENDED COMPLAINT - JURY TRIAL DEMANDED**

## I.   INTRODUCTION

1.   Plaintiff Kenneth Hopkins files this amended complaint as a matter of right, prior to the filing of a responsive pleading by defendant.  He brings this action for equitable relief and monetary damages to redress the deprivation of civil rights secured to him by the Section 504 of the Rehab Act, while he was an employee of the City of Wilmington.  Specifically, he alleges that while he was initially provided with a reasonable accommodation following an on the job injury, he was ultimately terminated from his employment when the Defendant rescinded said accommodation without justification, and that the defendant's actions caused him mental distress and humiliation, and loss of employment and compensation.  He seeks back pay, reinstatement or front pay, compensatory damages, attorneys fees, expenses and costs of this action.

## II.   JURISDICTION

2.   Jurisdiction of this civil rights action is conferred on this Court by 28 U.S.C. §§ 1343 and 1331.

1

3. Plaintiffs' claims are authorized by 29 U.S.C. §794(a).

4. Venue herein is proper under 28 U.S.C. § 1391(b) and (c), and 42 U.S.C. § 2000e-5(f)(3) as the acts complained of herein all occurred within this judicial district.

### III. PARTIES

5. Plaintiff Kenneth Hopkins is a citizen of the U.S. currently residing in Wilmington, DE and is subject to the jurisdiction of this court.

6. Defendant City of Wilmington is a municipality that receives federal funds, and was the employer who terminated plaintiff's employment. The City of Wilmington's offices are located at 800 French Street in Wilmington, DE. Defendant is therefore subject to the jurisdiction of this court.

### IV. STATEMENT OF FACTS

7. Mr. Hopkins was hired by the City of Wilmington as a technical maintenance worker ("building technician") on September 29, 1988.

8. On July 1, 1994, plaintiff was promoted to the position of Assistant Public Property Manager.

9. On June 16, 1998, plaintiff injured his left knee in the course of his work. As a result of the injury he was unable to kneel. Defendant provided him with the reasonable accommodation of not having to kneel and to have the right to ask an assistant to handle any kneeling tasks that came up in the course of his work.

10. Plaintiff received treatment for his injury which included, among other things, an arthroscopic procedure on February 4, 1999. Unfortunately, plaintiff's knee

continued to give him problems including pain and stiffness. He ultimately underwent a full knee replacement on January 5, 2004. Even though the surgery was successful, plaintiff has continued to have the work restriction that he is unable to kneel. He has also been issued a permanent impairment rating for the whole person of 20% and 50% for the left lower extremity.

11. Plaintiff returned to work in May of 2004 and was allowed to continue to work with the reasonable accommodation that he was not required to kneel during the course of his work. When there were occasions which required a person to kneel plaintiff was allowed to ask Sammuel Baise to perform those duties.

12. In 2004 plaintiff was diagnosed with hepatitis C.

13. Plaintiff was prescribed interferon to treat the condition.

14. In 2005 the hepatitis showed up in tests and it was decided by his treating physicians that interferon could not longer be used to treat his condition. Shortly thereafter Plaintiff enrolled in a clinical drug trial at Einstein Medical Center to see if the drugs being tested would help his condition.

15. Unfortunately, Plaintiff suffered a bad reaction to the drugs he was being given. As a result he was forced to stop working on or about February 23, 2006.

16. In November of 2006 plaintiff's medical condition had improved to the point that his physician released him to return to work. Plaintiff returned to work for Defendant in the same capacity he was in when he stopped working in February of 2006.

Defendant did not inform plaintiff at that time that it was not going to continue to reasonably accommodate him in the foreseeable future.

17. On March 16 Plaintiff was told by the physician at the City dispensary that the City no longer had a modified duty job for him and he was to go home. He did not however receive his workers' compensation indemnity checks initially. On May 8, 2007, plaintiff's workers' compensation attorney, Michael Bednash, spoke with Pamela White, with the City's Personnel Department. Ms. White explained that the City was going to try to get Mr. Hopkins to retire and that toward that end a skills assessment was going to be scheduled in the near future.

18. That very day, May 8, 2007 Defendant claims it sent a notice to plaintiff informing him that it could not continue to provide him with the reasonable accommodation. The Defendant contends that the letter was sent by Certified Mail. In that letter Defendant scheduled a skills assessment for plaintiff to take place on May 15, 2007. Plaintiff never received this letter and did not attend the skills assessment.

19. On June 1, 2007, without any evidence to indicate that Mr. Hopkins had received the letter of May 8, 2007, Monica Gonzalez-Gillespie, Defendant's Director of Personnel sent plaintiff a letter informing him that his failure to attend the skills assessment mean that his employment had been terminated to be effective as of June 8, 2007.

20. Plaintiff received the June 1 letter on June 4, 2007. His attorney contacted Ms. Gonzalez-Gillespie and informed her that neither he nor Mr. Hopkins had received

4

notice of the skills assessment or else Mr. Hopkins would have attended the appointment. Mr. Bednash asked if the skills assessment could be rescheduled. Ms. Gonzalez informed him that it could be rescheduled but Mr. Hopkins' termination was still effective.

21.     Plaintiff made an appointment for a skills assessment to take place on June 18, 2007.

22.     Mr. Hopkins attended the skills assessment. Even though the skills assessment indicated that he could perform the positions of Stores Clerk, Custodian or School Crossing Guard, Defendant did not place him in one of those positions, indicating that he could apply for one of them just like a member of the general public. Plaintiff applied for those jobs but was never given an interview.

23.     Upon information and belief the City of Wilmington's Department of Public Property has received federal funds directly, or indirectly, and therefore is a "program or activity" within the definition of the Rehab Act. Because plaintiff worked for a program or activity of Defendant which received federal funds Defendant is subject to the terms of the Rehab Act.

## COUNT I

## REHAB ACT VIOLATION

24.     Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 23 as though set forth fully herein.

25.     As a result of his medical condition plaintiff has a significant impairment in

the major life activity of "working", among others, and is therefore an individual with a disability under the Rehab Act.

26. Plaintiff was able to perform the essential functions of his job as an Assistant Public Property Manager either with, or without, a reasonable accommodation, and is therefore a qualified individual with a disability under the Rehab Act.

27. The unlawful actions of defendant in preventing plaintiff from performing his duties and then refusing to afford plaintiff a reasonable accommodation which would have allowed him to continue to work, and then terminating his employment, solely because of his disability, constitute intentional violations of the Rehab Act.

28. As a direct result of defendant's willful and unlawful actions in violation of the Rehab Act, plaintiff has suffered emotional pain and distress, and has sustained a loss of earnings, benefits, contributions to his pension, and front pay and interest due thereon.

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment in his favor:

(a) Awarding lost wages, including lost fringe benefits;

(b) Awarding compensatory damages;

(c) Order his reinstatement, or in the alternative, award front pay;

(d) Awarding the costs of this action, together with reasonable attorney's fees; and

(e) granting such other relief as the Court deems necessary and appropriate.

PLAINTIFF HEREBY DEMANDS A JURY TRIAL FOR ALL CLAIMS RAISED

                    Respectfully submitted,

                    By:

                    *s/Ralph E. Lamar, IV*
                    RALPH E. LAMAR, IV, Esq.
                    141 Spruce Lane
                    Collegeville, PA 19426
                    (610) 831-5181
                    (610) 831-0680 facsimile
                    ralph.lamar@verizon.net

                    */s/ Stephen J. Neuberger*
                    STEPHEN J. NEUBERGER, ESQ. (#4440)
                    Two East Seventh Street, Suite 302
                    Wilmington, Delaware 19801
                    (302) 655-0582
                    TSN@NeubergerLaw.com
                    SJN@NeubergerLaw.com

                    Attorneys for Plaintiff

Dated:  August  27, 2008

## CERTIFICATE OF SERVICE

I, Ralph E. Lamar, IV, Esquire hereby certify that on this the 27th day of August, 2008, I caused a true and correct copy of Plaintiff's First Amended Complaint to be served today by electronic mail upon counsel for Defendant at the address listed below:

>Gary W. Lipkin
>Assistant City Solicitor
>City of Wilmington Law Department
>800 North French Street, 9th Floor
>Wilmington, DE 19801

>By: __s/Ralph E. Lamar, IV___
>RALPH E. LAMAR, IV
>ATTORNEY FOR PLAINTIFF
>141 Spruce Lane
>Collegeville, PA 19426
>(610) 831-5181