IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| KENNETH W. HOPKINS, | : |
| | : CIVIL ACTION NO. 08-CV-302-JJF |
| Plaintiff, | : |
| vs. | : |
| | : |
| CITY OF WILMINGTON, | : |
| | : |
| Defendant. | : |

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

COMES NOW KENNETH HOPKINS, plaintiff herein, and file this his memorandum of law in opposition to Defendant's Motion to Dismiss as follows:

INTRODUCTION

Defendant City of Wilmington moves the court to dismiss plaintiff's complaint asserting bases: 1) that the Rehab Act does not cover municipalities (local governments), and 2) plaintiff has failed to exhaust his administrative remedies. Plaintiff has filed an amended complaint as a matter of right as of today's date (sent to the Clerk of the Court via U.S Mail as amended complaints may not be filed through the ECF system), prior to the filing of a responsive pleading by Defendants. (See copy of Amended Complaint attached as Exhibit A). Defendant's arguments are without support and the court should deny The City of Wilmington's motion.

I.   CONTRARY TO THE DEFENDANT'S ARGUMENT THE REHAB
     ACT DOES COVER MUNICIPALITIES

Defendant claims that it is not a "program or activity" as contemplated by the Amendments to the Rehab Act. It cites three cases which have held that the definition of a "program or activity" does not include a municipality. *Schroeder v. City of* Chicago, 715 F.Supp. 222, 225 (N.D.Ill. 1989), *aff'd.*, 927 F.2d 957 (7th Cir. 1991), *Micek v. City of Chicago*,

1

1999 U.S. Dist. LEXIS 16263 (N.D.Ill. Oct. 4, 1999) and *Alford v. City of Cannon* Beach, 2000 U.S.Dist. LEXIS 20730 (D.Ore. Jan. 17, 2000). Those cases are not from the Third Circuit and do not constitute binding authority. In fact, it appears that there is very little in the way of authority on the issue even though the Amendments to the Rehab Act were passed by Congress over 20 years ago.

The basic argument from the holdings of the cases cited by defendant is that Congress could not "possibly" have intended for a municipality as whole to be a "program or activity" because that would subject them to liability even when only one "program or activity" within its sphere received federal funds. The flaw in such an argument, and in the holdings of the cases cited by Defendant, is that Congress did not specifically *exempt* municipalities from the scope of the Rehab Act. A general rule of statutory construction is that Courts should not limit the scope of a statute where no express limitation is placed thereon by Congress (absent an improper use of its legislative authority).

In fact, in the Amendments to the Act, Congress specifically allowed for the inclusion of local governments under its scope by using the following language to define a "program or activity":

> "a department , agency, special purpose district, or other instrumentality of a State or local government; or the entity of such State or local government that distributes such assistance and each such department or agency (and each other State of local government entity) to which the assistance is extended, in the case of assistance to a State or local government…"

29 U.S.C. § 794(b)(1)(A)-(B).

From the preceding it is clear that Congress actually *intended* that States and local governments are included in the scope of the Act where a department or agency receives federal

assistance. Defendant simply chooses to ignore said language in positing its argument that a state or local government cannot be included as a program or activity under the law.[1]

Defendant does cite to the Third Circuit's holding in *Koslow v. Commonwealth of Pennsylvania*, 302 F.3d 161, 171 (3d Cir. 2002) that the State can not be a "program or activity" as defined by the Amendments to the Rehab Act. While plaintiff disagrees with the holding of the Third Circuit in *Koslow* (as it contravenes the specific language of the statute) he acknowledges the force of its limited holding. However, that case did not address whether a local municipal government can be liable under the Rehab Act when one of its employees works for a department which receives federal financial assistance. Accordingly, because it was not set forth in plaintiff's initial complaint he has filed an amended complaint in which he alleges that he specifically worked for a "program or activity" of Defendant that received federal financial assistance. (See Exhibit A).

Because Congress specifically intended departments or agencies of local governments to be treated as a "program or activity" under the Rehab Act and because Defendant's construction of the Rehab Act would result in a nullity, thereby completely contravening the language of the statute, as well as Congressional intent, the court should deny Defendant's Motion to Dismiss.

---

[1] Further evidence of the lack of merit of Defendant's argument is that it fails to provide any legal authority for the implied concept that a person can sue a particular department of a local or state government that receives federal funds instead of the institution as a whole. There is no authority for such. In fact in litigation under 42 U.S.C. § 1983 courts have held that police departments are not proper defendants and that the municipality itself is the proper defendant. See *Pahle v. Colebrookdale Township*, 227 F.Supp2d 361, 367 (E.D. Pa. 2002); *Baldi v. Philadelphia*, 609 F.Supp. 374, 377 (E.D. Pa. 1995); *Regalbuto v. Philadelphia*, 937 F.Supp. 374 (E.D. Pa. 1995). Plaintiff therefore posits the obvious question: "How can a 'program or activity' under the law ever be held accountable for a violation of the Rehab Act if an individual can not sue that program or activity itself and likewise (if a court were to accept Defendant's position) is not able to sue the local government itself? That construction would completely negate the express language of the Act which is contrary to the rules of construction.

## II. UNDER THE REHAB ACT PLAINTIFF IS NOT REQUIRED TO EXHAUST ANY ADMINISTRATIVE REMEDIES

The City of Wilmington acknowledges that plaintiffs are not required to exhaust administrative remedies under the Rehab Act itself. However, it argues that plaintiff should be required to exhaust any state administrative remedies before being able to file a complaint in federal court. Such argument is without support and should be rejected by the Court.

Defendant's argument fails for several reasons. When Congress enacted the ADA it required that individuals resort to the administrative process of the EEOC for the investigation and resolution of claims based upon disability discrimination. It made no such change to the Rehab Act which was already in place. Clearly, there was no impetus to force individuals with claims under the Rehab Act (even though they paralleled claims for disability discrimination under the ADA) to file an administrative claim before instituting suit. Courts have agreed and Defendant acknowledges this in its citation to *Freed v. Conrail*, 201 F.3d 188 (3d Cir. 2000).[2] However, Defendant then takes the wild leap to argue that where a *state* maintains a mechanism for investigating claims of discrimination pursuant to *state* law an individual is bound to follow those processes before filing a *federal* claim. This is nothing shy of ludicrous, Defendant's citation to one twenty-seven year old district court opinion from Iowa notwithstanding. There are issues of comity in such a scenario posited by Defendant. Federal statutes may not be

---

[2] This is not the only situation involving anti-discrimination law where a parallel claim may be brought under a different statute without requiring resort to an administrative process. In addition, persons with claims under 42 U.S.C. § 1981 for race discrimination are not required to first file said claims with an administrative agency, even though they would be required to do so under Title VII. There are no administrative filing requirements for claims under 42 U.S.C. § 1983. *Patsy v. Board of Regents*, 457 U.S. 496 (1982). The Third Circuit has held that plaintiffs may bring claims for discrimination claims under 42 U.S.C. § 1983 in addition to those under Title VII. See, e.g., *Bradley v. Pittsburgh Board of Education*, 913 F.2d 1064, 1079 (3d Cir. 1990)(the comprehensive scheme provided in Title VII does not preempt § 1983; discrimination

impeded by the states.  Subjecting individuals to a state administrative exhaustion requirement would clearly frustrate Congress' intent, saying nothing in the Rehab Act about exhausting under state rules.

  Plaintiff was not required to file a state administrative claim where the only cause of action he planned to file in federal court was a claim for a violation of federal law, namely the Rehab Act.  Defendant's motion to dismiss must be denied.

           Respectfully submitted,


           By:

           _s/Ralph E. Lamar, IV_____
           RALPH E. LAMAR, IV, Esq.
           141 Spruce Lane
           Collegeville, PA 19426
           (610) 831-5181
           (610) 831-0680 facsimile
           ralph.lamar@verizon.net

           */s/ Stephen J. Neuberger*
           STEPHEN J. NEUBERGER, ESQ. (#4440)
           Two East Seventh Street, Suite 302
           Wilmington, Delaware 19801
           (302) 655-0582
           TSN@NeubergerLaw.com
           SJN@NeubergerLaw.com

           Attorneys for Plaintiff

Dated:  August 27, 2008

---

claims may be brought under either statute, or both) and *Knoll v. Springfield Township School District*, 699 F.2d 137, 145 (3d Cir. 1983).

6

## CERTIFICATE OF SERVICE

I, Ralph E. Lamar, IV, Esquire hereby certify that on this the 27th day of August, 2008, I caused a true and correct copy of Plaintiff's Brief in Opposition to Defendant's Motion to Dismiss to be served today by electronic mail upon counsel for Defendant at the address listed below:

>Gary W. Lipkin
>Assistant City Solicitor
>City of Wilmington Law Department
>800 North French Street, 9th Floor
>Wilmington, DE 19801

>By:  *s/Ralph E. Lamar, IV*
>RALPH E. LAMAR, IV
>ATTORNEY FOR PLAINTIFF
>141 Spruce Lane
>Collegeville, PA 19426
>(610) 831-5181

# Ex. A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| KENNETH W. HOPKINS, | : |
| | : CIVIL ACTION NO. 08-CV-302-JJF |
| Plaintiff, | : |
| vs. | : |
| | : |
| CITY OF WILMINGTON, | : |
| | : |
| Defendant. | : |

**AMENDED COMPLAINT - JURY TRIAL DEMANDED**

**I.   INTRODUCTION**

1.   Plaintiff Kenneth Hopkins files this amended complaint as a matter of right, prior to the filing of a responsive pleading by defendant. He brings this action for equitable relief and monetary damages to redress the deprivation of civil rights secured to him by the Section 504 of the Rehab Act, while he was an employee of the City of Wilmington. Specifically, he alleges that while he was initially provided with a reasonable accommodation following an on the job injury, he was ultimately terminated from his employment when the Defendant rescinded said accommodation without justification, and that the defendant's actions caused him mental distress and humiliation, and loss of employment and compensation. He seeks back pay, reinstatement or front pay, compensatory damages, attorneys fees, expenses and costs of this action.

**II.   JURISDICTION**

2.   Jurisdiction of this civil rights action is conferred on this Court by 28 U.S.C. §§ 1343 and 1331.

1

3. Plaintiffs' claims are authorized by 29 U.S.C. §794(a).

4. Venue herein is proper under 28 U.S.C. § 1391(b) and (c), and 42 U.S.C. § 2000e-5(f)(3) as the acts complained of herein all occurred within this judicial district.

### III. PARTIES

5. Plaintiff Kenneth Hopkins is a citizen of the U.S. currently residing in Wilmington, DE and is subject to the jurisdiction of this court.

6. Defendant City of Wilmington is a municipality that receives federal funds, and was the employer who terminated plaintiff's employment. The City of Wilmington's offices are located at 800 French Street in Wilmington, DE. Defendant is therefore subject to the jurisdiction of this court.

### IV. STATEMENT OF FACTS

7. Mr. Hopkins was hired by the City of Wilmington as a technical maintenance worker ("building technician") on September 29, 1988.

8. On July 1, 1994, plaintiff was promoted to the position of Assistant Public Property Manager.

9. On June 16, 1998, plaintiff injured his left knee in the course of his work. As a result of the injury he was unable to kneel. Defendant provided him with the reasonable accommodation of not having to kneel and to have the right to ask an assistant to handle any kneeling tasks that came up in the course of his work.

10. Plaintiff received treatment for his injury which included, among other things, an arthroscopic procedure on February 4, 1999. Unfortunately, plaintiff's knee

continued to give him problems including pain and stiffness. He ultimately underwent a full knee replacement on January 5, 2004. Even though the surgery was successful, plaintiff has continued to have the work restriction that he is unable to kneel. He has also been issued a permanent impairment rating for the whole person of 20% and 50% for the left lower extremity.

11. Plaintiff returned to work in May of 2004 and was allowed to continue to work with the reasonable accommodation that he was not required to kneel during the course of his work. When there were occasions which required a person to kneel plaintiff was allowed to ask Sammuel Baise to perform those duties.

12. In 2004 plaintiff was diagnosed with hepatitis C.

13. Plaintiff was prescribed interferon to treat the condition.

14. In 2005 the hepatitis showed up in tests and it was decided by his treating physicians that interferon could not longer be used to treat his condition. Shortly thereafter Plaintiff enrolled in a clinical drug trial at Einstein Medical Center to see if the drugs being tested would help his condition.

15. Unfortunately, Plaintiff suffered a bad reaction to the drugs he was being given. As a result he was forced to stop working on or about February 23, 2006.

16. In November of 2006 plaintiff's medical condition had improved to the point that his physician released him to return to work. Plaintiff returned to work for Defendant in the same capacity he was in when he stopped working in February of 2006.

Defendant did not inform plaintiff at that time that it was not going to continue to reasonably accommodate him in the foreseeable future.

17. On March 16 Plaintiff was told by the physician at the City dispensary that the City no longer had a modified duty job for him and he was to go home. He did not however receive his workers' compensation indemnity checks initially. On May 8, 2007, plaintiff's workers' compensation attorney, Michael Bednash, spoke with Pamela White, with the City's Personnel Department. Ms. White explained that the City was going to try to get Mr. Hopkins to retire and that toward that end a skills assessment was going to be scheduled in the near future.

18. That very day, May 8, 2007 Defendant claims it sent a notice to plaintiff informing him that it could not continue to provide him with the reasonable accommodation. The Defendant contends that the letter was sent by Certified Mail. In that letter Defendant scheduled a skills assessment for plaintiff to take place on May 15, 2007. Plaintiff never received this letter and did not attend the skills assessment.

19. On June 1, 2007, without any evidence to indicate that Mr. Hopkins had received the letter of May 8, 2007, Monica Gonzalez-Gillespie, Defendant's Director of Personnel sent plaintiff a letter informing him that his failure to attend the skills assessment mean that his employment had been terminated to be effective as of June 8, 2007.

20. Plaintiff received the June 1 letter on June 4, 2007. His attorney contacted Ms. Gonzalez-Gillespie and informed her that neither he nor Mr. Hopkins had received

4

notice of the skills assessment or else Mr. Hopkins would have attended the appointment. Mr. Bednash asked if the skills assessment could be rescheduled. Ms. Gonzalez informed him that it could be rescheduled but Mr. Hopkins' termination was still effective.

21. Plaintiff made an appointment for a skills assessment to take place on June 18, 2007.

22. Mr. Hopkins attended the skills assessment. Even though the skills assessment indicated that he could perform the positions of Stores Clerk, Custodian or School Crossing Guard, Defendant did not place him in one of those positions, indicating that he could apply for one of them just like a member of the general public. Plaintiff applied for those jobs but was never given an interview.

23. Upon information and belief the City of Wilmington's Department of Public Property has received federal funds directly, or indirectly, and therefore is a "program or activity" within the definition of the Rehab Act. Because plaintiff worked for a program or activity of Defendant which received federal funds Defendant is subject to the terms of the Rehab Act.

## COUNT I

## REHAB ACT VIOLATION

24. Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 23 as though set forth fully herein.

25. As a result of his medical condition plaintiff has a significant impairment in

the major life activity of "working", among others, and is therefore an individual with a disability under the Rehab Act.

26. Plaintiff was able to perform the essential functions of his job as an Assistant Public Property Manager either with, or without, a reasonable accommodation, and is therefore a qualified individual with a disability under the Rehab Act.

27. The unlawful actions of defendant in preventing plaintiff from performing his duties and then refusing to afford plaintiff a reasonable accommodation which would have allowed him to continue to work, and then terminating his employment, solely because of his disability, constitute intentional violations of the Rehab Act.

28. As a direct result of defendant's willful and unlawful actions in violation of the Rehab Act, plaintiff has suffered emotional pain and distress, and has sustained a loss of earnings, benefits, contributions to his pension, and front pay and interest due thereon.

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment in his favor:

(a) Awarding lost wages, including lost fringe benefits;

(b) Awarding compensatory damages;

(c) Order his reinstatement, or in the alternative, award front pay;

(d) Awarding the costs of this action, together with reasonable attorney's fees; and

(e) granting such other relief as the Court deems necessary and appropriate.

PLAINTIFF HEREBY DEMANDS A JURY TRIAL FOR ALL CLAIMS RAISED

       Respectfully submitted,


       By:

       _s/Ralph E. Lamar, IV_____
       RALPH E. LAMAR, IV, Esq.
       141 Spruce Lane
       Collegeville, PA 19426
       (610) 831-5181
       (610) 831-0680 facsimile
       ralph.lamar@verizon.net

       */s/ Stephen J. Neuberger*
       STEPHEN J. NEUBERGER, ESQ. (#4440)
       Two East Seventh Street, Suite 302
       Wilmington, Delaware 19801
       (302) 655-0582
       TSN@NeubergerLaw.com
       SJN@NeubergerLaw.com

       Attorneys for Plaintiff

Dated:  August  27, 2008

## CERTIFICATE OF SERVICE

    I, Ralph E. Lamar, IV, Esquire hereby certify that on this the 27th day of August, 2008, I caused a true and correct copy of Plaintiff's First Amended Complaint to be served today by electronic mail upon counsel for Defendant at the address listed below:

        Gary W. Lipkin
        Assistant City Solicitor
        City of Wilmington Law Department
        800 North French Street, 9th Floor
        Wilmington, DE 19801

        By: __s/Ralph E. Lamar, IV___
            RALPH E. LAMAR, IV
            ATTORNEY FOR PLAINTIFF
            141 Spruce Lane
            Collegeville, PA 19426
            (610) 831-5181

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| KENNETH W. HOPKINS, | : |
| | : CIVIL ACTION NO. 08-CV-302-JJF |
| Plaintiff, | : |
| vs. | : |
| | : |
| CITY OF WILMINGTON, | : |
| | : |
| Defendant. | : |

ORDER

Having considered Defendant's Motion to Dismiss and Plaintiffs' Memorandum of Law in Opposition thereto and finding no good cause for same, it is hereby ORDERED AND ADJUDGED, that Defendant's Motion to Dismiss is DENIED.

This _____ day of _____, 2008.

_____
Joseph J. Farnan, Jr.
United States District Judge
District of Delaware