IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| KENNETH W. HOPKINS, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No. 08-302-JJF |
| | : | |
| | : | |
| CITY OF WILMINGTON, | : | |
| | : | |
| Defendant. | : | |

Ralph E. Lamar, IV, Esquire, Collegeville, Pennsylvania.
Stephen J. Neuberger, Esquire of THE NEUBERGER FIRM, Wilmington,
Delaware.

Attorneys for Plaintiff.

Martin C. Meltzer, Esquire, CITY OF WILMINGTON LAW DEPARTMENT,
Wilmington, Delaware.

Attorney for Defendant.

**MEMORANDUM OPINION**

June 25, 2009
Wilmington, Delaware.

Joseph J Farnan Jr.
**Farnan, District Judge.**

Pending before the Court is Defendant City Of Wilmington's
Motion To Dismiss The Amended Complaint Pursuant To F.R.C.P.
12(b)(6). (D.I. 10.) For the reasons discussed, the Motion will
be denied.

## I. BACKGROUND

### A. PROCEDURAL BACKGROUND

On May 21, 2008, Plaintiff Kenneth W. Hopkins ("Hopkins")
initiated this action, asserting a claim against Defendant, the
City of Wilmington, for deprivation of civil rights pursuant to
Section 504 of the Rehabilitation Act, 29 U.S.C. § 794(a). (D.I.
1.) On September 15, 2008, the City of Wilmington moved to
dismiss Hopkins's claim pursuant to Federal Rule of Civil
Procedure 12(b)(6). (D.I. 10.)

### B. FACTUAL BACKGROUND

For the purpose of addressing the City of Wilmington's
Motion, the Court assumes Hopkins's version of the facts to be
true. Beginning in September 1988, the City of Wilmington
employed Hopkins as a building technician. (D.I. 7 ¶ 7.) On
June 16, 1998, Hopkins injured his left knee in the course of
work. (Id. ¶ 9.) This injury resulted in the City of Wilmington
providing a reasonable accommodation to Hopkins. Specifically,
the City of Wilmington provided Hopkins with an assistant to help
with any tasks that would have required him to kneel.

1

Nevertheless, Hopkins continued to have problems with his left knee, and he underwent a full knee replacement in January 2004. (Id. ¶ 10.) After returning to work in May 2004, the City of Wilmington again made a similar accommodation to assist Hopkins in tasks that required kneeling. (Id. ¶ 11.)

Subsequently, Hopkins was diagnosed with hepatitis C, and, in February 2006, Hopkins suffered a reaction to a drug he was taking for the hepatitis, which required him to cease work. (Id. ¶¶ 12-15.) In November 2006, Hopkins's condition improved, and he was able to return to work. (Id. ¶ 16.) Hopkins alleges that upon returning to work the City of Wilmington made no representations as to whether they would continue to provide an accommodation for his knee problems. (Id.)

However, on March 16, 2007, a physician at the City of Wilmington allegedly informed Hopkins that it no longer had a modified duty job for him and instructed Hopkins to go home. (Id. ¶ 17.) On May 8, 2007, the City of Wilmington claims that it sent notice to Hopkins, by certified mail, informing him that the City of Wilmington could no longer provide him with a reasonable accommodation for his knee. (Id. ¶ 18.) The letter further stated that Hopkins was to participate in a skills assessment on May 15, 2007, to determine what jobs, if any, Hopkins would be qualified to perform for the City of Wilmington. (Id.) Hopkins maintains that he never received this letter and,

2

as a result, did not attend the skills assessment on May 15, 2007.  (Id.)  On June 1, 2007, the City of Wilmington sent a letter to Hopkins informing him that because he failed to attend the skills assessment, his employment would be terminated effective June 8, 2007.  (Id. ¶ 19.)

Upon receipt of this letter, Hopkins contacted the City of Wilmington, explaining that he never received notice of the skills assessment and asking that the assessment be rescheduled.  (Id. ¶ 20.)  Although the City of Wilmington rescheduled the assessment, it informed Hopkins that his employment would remain terminated.  (Id.)  Hopkins attended the rescheduled skills assessment, where he was judged capable of performing the positions of Stores Clerk, Custodian, and School Crossing Guard.  (Id. ¶ 22.)  However, the City of Wilmington never offered Hopkins any of these positions.  (Id.)  After determining that the City of Wilmington's Department of Public Property received federal funds, a requirement for bringing a Section 504 claim, Hopkins brought this action for violation of Section 504 of the Rehabilitation Act.  (Id. ¶ 23.)

## II.  PARTIES' CONTENTIONS

The City of Wilmington contends that Hopkins could have filed his claim under either the Americans with Disabilities Act of 1990 ("ADA")[1] or the Delaware Discrimination in Employment Act

---

[1]  See 42 U.S.C. §§ 12101-17 (2009).

3

("DDEA").[2] (D.I. 11 at 4.) By filing under Section 504 of the Rehabilitation Act, the City of Wilmington contends that Hopkins was merely attempting to bypass the requirements of both the ADA and DDEA that he first exhaust available administrative remedies before bringing suit. In these circumstances, the City of Wilmington argues that Hopkins should be barred from suing under Section 504 of the Rehabilitation Act because he did not first exhaust his available state administrative remedies. (Id. at 5-8.)

In its Opening Brief in support of its Motion To Dismiss, the City of Wilmington relies on the Southern District of Iowa decision Peterson v. Gentry, No. 81-163-D, 1981 WL 27005 (S.D. Iowa August 19, 1981), which held that a plaintiff bringing a Section 504 claim must exhaust any available state remedies first. In this respect, the City of Wilmington distinguishes Freed v. Consolidated Rail Co., 201 F.3d 188 (3d Cir. 2000), which it characterizes as the "leading Third Circuit case on exhaustion of administrative remedies in the context of § 504 of the Rehabilitation Act," as narrowly pertaining to the issue of federal administrative remedies as opposed to state remedies. (D.I. 11 at 5.)

The City of Wilmington further contends that the policy behind not requiring exhaustion of federal administrative

---

[2] See Del. Code Ann. tit. 19 §§ 710-18. (2004).

remedies is inapplicable to plaintiffs that have state administrative remedies available. Briefly, the City of Wilmington argues that to the extent courts have held that Section 504 does not require exhaustion of federal administrative remedies, they have done so only because those remedies do not provide plaintiffs with meaningful relief. However, where, as here, meaningful state administrative remedies are available, not requiring plaintiffs to pursue such remedies first would make a "mockery of the administrative process" that both "Congress and the Delaware General Assembly instituted . . . to redress disability discrimination" claims. (D.I. 14 at 3.)

Hopkins responds that if the Court were to dismiss this action, he would have no available redress for the City of Wilmington's alleged discrimination because his alternative claims under the ADA or the DDEA are now time barred. (D.I. 12 at 3.) In addition, Hopkins contends that there is little or no authority supporting the City of Wilmington's position that he must exhaust available state administrative remedies prior to bringing a federal Section 504 claim. (Id. at 2.) On the contrary, Hopkins contends that under Freed, plaintiffs are not required to file administrative claims - of any kind - prior to bringing a Section 504 claim. As to the Peterson decision from the Southern District of Iowa, Hopkins maintains that a "twenty-seven year old district court opinion from Iowa" is unpersuasive

authority for a broad rule barring plaintiffs from bringing federal Section 504 claims if they have not first exhausted state administrative remedies. (Id.) Finally, Hopkins argues that the City of Wilmington would not be prejudiced in any way by allowing Hopkins to file a Section 504 claim instead of an ADA or DDEA claim. (Id.)

## III. LEGAL STANDARD

In considering a motion to dismiss filed under Federal Rule of Civil Procedure 12(b)(6), the Court must accept all factual allegations in a complaint as true and consider them in the light most favorable to plaintiff. Erickson v. Pardus, 551 U.S. 89 (2007). A complaint must contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (interpreting Fed. R. Civ. P. 8(a)). A complaint need not contain detailed factual allegations; however, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" Id. (citations omitted). The "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." Id. at 547.

## IV.    DISCUSSION

The Court begins with the text of Title VI and accompanying federal regulations, which governs the administrative remedies available to a Section 504 plaintiff.  See 29 U.S.C. 794a(a)(2). Notably, Title VI makes no mention of any requirement that plaintiffs exhaust administrative remedies before bringing a Section 504 claim.[3]  Furthermore, the only administrative remedies available to plaintiffs under Title VI are the termination or denial of federal funding to the entity receiving federal financial assistance, usually the plaintiff's employer.[4] Thus, under Title VI, Section 504 plaintiffs are not eligible to

---

[3]  Briefly, the relevant federal regulations provide that complaints seeking removal of federal funding shall be submitted to the specific agency extending financial assistance to the alleged violating employer.  After this complaint is filed, there is a detailed administrative review process for determining whether the relevant agency has committed a violation and whether the complainant should receive any remedies.  See generally 29 C.F.R. § 1691 et. seq.

[4]  The remedies available under Title VI are:

Compliance with any requirement adopted pursuant to this section may be effected (1) by the termination of or refusal to grant or to continue assistance under such program or activity to any recipient as to whom there has been an express finding on the record, after opportunity for hearing, of a failure to comply with such requirement, but such termination or refusal shall be limited to the particular political entity, or part thereof, or other recipient as to whom such a finding has been made and, shall be limited in its effect to the particular program, or part thereof, in which such noncompliance has been so found, or (2) by any other means authorized by law.

42 U.S.C. § 2000d-1 (2000).

receive any direct compensation for discrimination by bringing an administrative action. In these circumstances, the United States Supreme Court has held that there exists a private right to sue under Title VI and that Title VI administrative remedies need not be exhausted prior to suit. See Cannon v. Univ. of Chicago, 441 U.S. 677, 708 n.41 (1979) ("[W]e are not persuaded that individual suits [under Title VI] are inappropriate in advance of exhaustion of administrative remedies").

Given that neither the Rehabilitation Act nor Title VI include an explicit exhaustion requirement, the Court finds the City of Wilmington's reliance on the Peterson decision from the Southern District of Iowa unpersuasive. In Peterson, the Southern District of Iowa held that the plaintiff must exhaust available state administrative remedies before filing a Section 504 claim because those remedies allowed the same redress that the plaintiff was seeking under Section 504. See Peterson, 1981 WL 27005 at *4. However, the Court has reviewed Peterson and notes that it cites no binding authority mandating the exhaustion of state remedies prior to bringing a Section 504 claim.[5]

_____

[5] The only other authority the City of Wilmington relies upon is a treatise on employment discrimination in which the author reasoned that logic of the United States Supreme Court in Cannon "does not apply with full force, since it cannot be said automatically that a particular state remedy is inadequate or that resort would be futile." 9 Arthur Larson, Employment Discrimination ¶ 163-38 (2d ed. 2009). In the Court's view, this authority does not overcome Title VI's silence regarding the exhaustion of administrative remedies.

8

In the Court's view, the Third Circuit's decision in Freed
is far more persuasive here.  In Freed, the Third Circuit held
that Section 504 plaintiffs need not first exhaust federal Title
VI administrative remedies before bringing suit.  See Freed, 201
F.3d at 193-94.  This was so, the Third Circuit held, even where,
as here, the plaintiff also has a viable claim under the ADA, a
statute that does require exhaustion of administrative remedies.
Id. at 194.  With respect to two independent statutes such as the
ADA and Rehabilitation Act, the Third Circuit found "no basis to
assume" that Congress intended each statute to have similar
exhaustion requirements.  Following Freed, the Court likewise
sees "no basis to assume" that Congress intended plaintiffs to
exhaust administrative remedies available under an independent
state statute, such as the DDEA, before bringing a Section 504
claim.  The City of Wilmington contends that Freed is not
entirely on point because Freed simply was not considering
whether Section 504 plaintiffs must exhaust state administrative
remedies before bringing suit.  See Freed, 201 F.3d at 192 ("[W]e
are presented with the narrow issue whether a plaintiff suing
solely under section 504 must exhaust the Title VI administrative
process before bringing suit against a private recipient of
federal funds.").  However, Freed broadly states that "nothing in
the language of Section 504 or Title VI requires administrative
exhaustion."  Freed, 201 F.3d at 194.  Likewise, the Third

Circuit in <u>Jeremy H. *ex rel.* Hunter v. Mount Lebanon Sch. Dist.</u>, 95 F.3d 272, 282 n. 17 (3d Cir. 1996), explained that Section 504 of the Rehabilitation Act, unlike Section 501 of the Rehabilitation Act and Title VII, has no exhaustion procedures. Finally, and perhaps most persuasive, this Court, citing <u>Jeremy H.</u>, has explicitly stated that "the enforcement provisions of the ADA and Section 504 do not require the plaintiff to exhaust <u>state</u> remedies." <u>Doe v. Sylvester</u>, No. 99-891, 2001 W.L. 1064810, at *8 (D. Del. Sept. 11, 2001) (emphasis added).

Based on the above, the Court will not require Hopkins to exhaust state administrative remedies before asserting a federal Section 504 claim.  Accordingly, the Court will deny the City of Wilmington's Motion To Dismiss.

## V.  CONCLUSION

For the reasons discussed, the Court will deny Defendant City Of Wilmington's Motion To Dismiss The Amended Complaint Pursuant To F.R.C.P. 12(b)(6).