IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| KENNETH W. HOPKINS, | : |
| Plaintiff, | : |
| v. | : C.A. No. 08-302-LPS |
| CITY OF WILMINGTON, | : |
| Defendant. | : |

# MEMORANDUM OPINION

Stephen J. Neuberger, The Neuberger Firm, P.A., Wilmington, Delaware and Ralph E. Lamar IV, Philadelphia, Pennsylvania.

    Attorneys for Plaintiffs.

Martin C. Meltzer, Assistant Solicitor, City of Wilmington Law Department, Wilmington, Delaware.

    Attorney for Defendant.

February 23, 2012
Wilmington, Delaware

STARK, U.S. District Judge:

Presently pending before the Court is a motion for summary judgment filed by Defendant City of Wilmington ("Defendant" or "City"). (D.I. 37) For the reasons set forth below, the Court will deny Defendant's motion for summary judgment.

## BACKGROUND[1]

This case arises out of a dispute surrounding the termination of Plaintiff Kenneth W. Hopkins' ("Plaintiff") employment by Defendant. Beginning in 1988, Plaintiff was employed by the City as a Maintenance Mechanic, and was promoted to the positions of Building Technician II and Assistant Property Manager in 1991 and 1994, respectively. (D.I. 38 at 1-3) Among the physical abilities necessary to perform the job of Maintenance Mechanic and Building Technician II were the capacity to kneel, crawl, squat, climb, and lift objects up to a weight of 100 pounds. (*Id.* at 4)

The position of Assistant Property Manager included broader responsibilities such as a supervisory capacity. (*Id.* at 5-7) However, the official job description of Assistant Property Manager does not mention the specific physical requirements of the job, nor does it mention that the job includes the physical requirements of Building Technician II. (D.I. 42, Ex. C. at 51; D.I. 42, Ex. D) In this new role, Plaintiff directly supervised Samuel Blaise, his replacement as Building Technician II; both Plaintiff and Blaise were supervised by the Public Property Manager, William Kaminski, who assigned them jobs to complete either individually or as a team. Plaintiff was also required to be "on-call" for emergencies 24 hours per day, 7 days per

---

[1]The facts presented are based on the parties' submissions and a review of the record created by the parties. Where there are disputes of fact, all reasonable inferences are drawn in the non-moving party's favor.

1

week, alternating weekly.

Plaintiff injured his knee on the job in June 1998, after slipping on a wet surface, and subsequently underwent arthroscopic surgery in 1999 and then a total knee replacement in 2004. (D.I. 38 at 15-18, 21-26, 36-40) As a result of his knee injury, Hopkins was put on modified duty by Defendant several times, and during this time he was assisted in some aspects of his job by his co-worker, Blaise. (*Id.* at 12-14, 28-35) Plaintiff was also not placed on the "on-call" schedule for nearly two years. (*Id.* at 12-14) From February through November 2006, Plaintiff took Family Medical Leave in order to undergo clinical treatment for Hepatitis C, and from December 2006 to March 2007 he was alternatively placed on regular and modified duty by Defendant. (*Id.* at 51-57) Continued aggravation of his injury led to him being sent home or placed on modified duty multiple times throughout April 2007. (*Id.* at 61-66) Defendant never notified Plaintiff that he would be subject to termination or that his modified duty status would be temporary. (D.I. 42, Ex. H ¶ 3)

In April 2007, the City's Personnel Director requested that the City physician evaluate Plaintiff's physical capacity to perform the essential functions of his job. (D.I. 39 at 67-68) The Wilmington City Code states in pertinent part:

> No employee shall hold any position in which he or she is
> physically or otherwise unable to perform the duties of the position
> without hazard to himself or others.

Wilm. C. § 40-54 (b). Various doctors and the City nurse concluded during this time that Plaintiff could not kneel, crawl, climb, or squat; one doctor recommended that he retire. (D.I. 38 at 58-60, 67-69) No one felt that Hopkins was "a hazard to himself or others." (D.I. 42, Ex. M at 69) Additionally, no one told the Personnel Director that Plaintiff was unable to perform his

2

job; nor did the Personnel Director discuss the possibility of making a permanent reasonable accommodation for Plaintiff as a result of his permanent injury. (*Id.*, Ex. F at 17)

In order to find a job more suitable for an individual with Plaintiff's physical limitations, Defendant scheduled a skills assessment, intending to help identify any vacant City positions for which he would be eligible. (D.I. 38 at 74) The Personnel Director sent a letter advising Plaintiff of the skills assessment appointment via certified mail, but it was never received, and the City failed to follow-up to ensure that Plaintiff had received the letter. (D.I. 42, Ex. F at 27-28; *id.*, Ex. H at ¶ 11) Instead, when Plaintiff did not appear for the skills assessment appointment, his employment with the City was terminated effective June 1, 2007. (D.I. 38 at 76) Because Plaintiff never received notice of the original appointment, another appointment was scheduled, and a skills assessment took place on June 18, 2007. There, it was recommended that Plaintiff apply for a position as a store clerk, custodian, or school crossing guard when those positions became available and subject to budget and labor contract provisions. (*Id.* at 77-78, 87-88) Additionally, a certified vocational specialist found that, due to his injury, Plaintiff had lost access to over 98% of the jobs that require training similar to his. (D.I. 42, Ex. B at 7-10)

On May 21, 2008, Plaintiff filed a complaint alleging that Defendant violated his civil rights secured to him by Section 504 of the Rehabilitation Act, 29 U.S.C. § 794(a) ("Act"). (D.I. 1) Count I of the complaint contends that, as a result of his medical condition, Plaintiff has a significant impairment in the major life activity of working, and therefore is an individual with a disability under the Act. Additionally, Plaintiff argues that he was able to perform the essential functions of his job with or without reasonable accommodation, and therefore he is a qualified individual under the Act. Further, Plaintiff claims that Defendant's refusal to provide a

reasonable accommodation and its termination of his employment solely due to his disability constitute violations of the Act, causing him emotional pain and distress as well as a loss of earnings.

On August 11, 2008, Defendant filed a Motion to Dismiss with a supporting brief. (D.I. 5) After Plaintiff filed an amended complaint on August 27, 2008 (D.I. 7), the Motion to Dismiss was terminated on September 8, 2008. Defendant then filed a Motion to Dismiss the amended complaint on September 15, 2008 (D.I. 10), which was denied on June 25, 2009 (D.I. 22).

Defendant filed its Motion for Summary Judgment on May 13, 2010. (D.I. 37) This motion was fully briefed as of August 3, 2010. (D.I. 42, 44)[2] On August 17, 2010, the case was reassigned from now-retired Judge Joseph J. Farnan, Jr.

## LEGAL STANDARDS

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (a). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n. 10 (1986). A party asserting that a fact cannot be – or, alternatively, is – genuinely disputed must be supported either by citing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including

---

[2]Plaintiff's Motion to Strike Defendant's Reply Brief or, in the Alternative, for Leave to File a Sur-Reply Brief (D.I. 45), will be denied. Plaintiff largely complains about Defendant's new legal citations and attachment of affidavits relating to a crossing guard position which Defendant included with its Reply Brief. Given the Court's decision to deny Defendant's motion for summary judgment, Plaintiff's motion to strike is moot.

4

those made for the purposes of the motions only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B). If the moving party has carried its burden, the nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587 (internal quotation marks omitted). The Court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

To defeat a motion for summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586-87; *see also Podobnik v. U.S. Postal Service*, 409 F. 3d 584, 594 (3d Cir. 2005) (stating party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal quotation marks omitted). However, the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment;" a factual dispute is genuine only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (stating entry of summary judgment is mandated "against a party who failed to make a showing sufficient to establish the existence of an element essential to

that party's case, and on which that party will bear the burden of proof at trial.").

## DISCUSSION

In order to prove a violation of the Act, Plaintiff must prove three things:

> 1) He is a disabled person within the meaning of the ADA;
>
> 2) He is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and
>
> 3) He has suffered an otherwise adverse employment decision as a result of discrimination.

*Ozlek v. Potter*, 259 Fed. App'x 417, 419-20 (3d. Cir. Dec. 19, 2007). For the reasons set forth below, the Court finds that there are genuine issues of material fact that preclude the grant of summary judgment.

### A. Whether Plaintiff Can Perform the Essential Functions of Assistant Property Manager

Plaintiff must first demonstrate that he is a qualified individual with a disability within the ambit of the Rehabilitation Act. His burden is to show that he is an otherwise qualified individual. A two-part test applies:

> First, a court must consider whether the individual satisfies the prerequisites for the position, such as possessing the appropriate background, employment experience, skills, licenses, etc. Second, the court must consider whether or not the individual can perform the essential functions of the position held or desired, with or without reasonable accommodation.

*Ozlek*, 259 Fed. App'x at 420.

The parties do not dispute that Plaintiff meets the first part of this test. (D.I. 37 at 16) However, the parties disagree as to what constitutes the essential functions of the job of Assistant

6

Property Manager and whether Plaintiff can perform them despite his injury, with or without reasonable accommodation. Defendant contends that the job of Assistant Property Manager necessarily includes the ability to kneel, squat, crawl, climb, and lift objects up to 100 pounds in weight. (D.I. 37 at 14) Plaintiff, on the other hand, claims that the job description, as advertised by Defendant, does not include such duties. Additionally, Plaintiff believes, having been the first person to hold the position, that such abilities are not part of the essential functions of the job. (D.I. 42 at 21)

There is a material factual dispute as to the essential functions of the job of Assistant Property Manager. A reasonable factfinder could conclude that Defendant's written job description and advertisement do or do not fully and accurately reflect the essential functions of Assistant Property Manager, as the job was actually performed at and around the time Plaintiff held the position. The record shows there were no physical tests for applicants for the job. A reasonable factfinder could find that Plaintiff was capable of performing the essential job functions of the position of Assistant Property Manager, with and/or without reasonable accommodations.[3]

### B. Whether Plaintiff is a Disabled Individual Under the Rehabilitation Act

To be considered a disabled person under the terms of the Rehabilitation Act, Plaintiff must prove that he "suffers from an impairment which substantially limits a major life activity;" here, the life activity of working. *Sutton v. United Airlines, Inc.,* 527 U.S. 471, 481 (1999). To be "substantially limited," Plaintiff must be "significantly restricted in the ability to perform

---

[3]There is also a material factual dispute as to whether Defendant was required to provide (and whether it did provide) an accommodation of allowing Plaintiff to use a subordinate to assist him with duties Plaintiff could not perform for himself.

7

either a class of jobs or a broad range of jobs" to which he has reasonable access within his geographic area. *EEOC v. Rockwell Int'l Corp.,* 243 F.3d 1012, 1017 (7th Cir. 2001). EEOC regulations define "substantially limited," in pertinent part, as "significantly restricted as to the condition, manner, or duration under which an individual can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform the same major life activity." 29 C.F.R. § 1630.2(j)(1). When evaluating whether one is substantially limited in a major life activity, courts are to take into account:

> (i) The nature and severity of the impairment;
>
> (ii) The duration or expected duration of the impairment; and
>
> (iii) The permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment.

29 C.F.R. § 1630.2(j)(2). Additionally, a person is substantially limited in the life activity of working when he can prove he is substantially limited in his ability to perform either a class of jobs or a broad range of jobs in various classes. *See* 29 C.F.R. § 1630(j)(3)(i).

The question of whether a person is substantially limited in a major life activity is a question of fact for the fact-finder to resolve. *See Gagliardo v. Connaught Laboratories, Inc.,* 311 F.3d 565, 569 (3d Cir. 2002). Defendant contends that because Plaintiff was identified as being eligible for eight other jobs following his skills assessment, he is not substantially limited in the major life activity of working. (D.I. 42) However, Plaintiff presents an expert opinion that, as a result of his injury, Plaintiff is precluded from performing 98% of the jobs he would otherwise have been qualified for in his geographic region. (D.I. 42, Ex. B at 9) There is, then, a genuine issue of material fact as to whether Plaintiff is substantially limited in the major life

activity of working.

C. **Whether Defendant Made a Good Faith Effort to Engage in the Interactive Process and Provide Plaintiff With a Reasonable Accommodation**

An employer's duty to accommodate includes the employer's "reasonable efforts to assist the employee and to communicate with the employee in good faith," which is known as the interactive process. *Mengine v. Runyon*, 114 F.3d 415, 416 (3d Cir. 1987). Plaintiff contends that the City's decision to terminate his employment – without advance notice, without notice that the alleged reasonable accommodation was temporary, and in the context of the lack of communication regarding the skills assessment interview – was capricious and, thus, not an action undertaken in good faith. (D.I. 42 at 23-24)[4] Defendant counters that the fact that a skills assessment occurred is enough to satisfy the "interactive process" requirement. (D.I. 44 at 14) The Court concludes that this issue presents another genuine dispute of material fact that precludes the granting of summary judgment.

## CONCLUSION

For the foregoing reasons, the Court will deny Defendant's motion for summary judgment on Count I of the Second Amended Complaint. An appropriate Order follows.

---

[4]It is undisputed that Plaintiff's termination was an adverse employment action.